NOERR MOTOR FREIGHT, Inc. et al. v. EASTERN R. R. PRESIDENTS CONFERENCE et al.

Civ. A. No. 14715.

United States District Court
E. D. Pennsylvania.

July 21, 1953.

See also, 14 F.R.D. 189.

740

Robert McCay Green, Dilworth, Paxson, Kalish & Green, Philadelphia, Pa., for plaintiffs.

Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., for defendants Pennsylvania R. Co., Walter S. Franklin and M. W. Clement.

Arthur Littleton, Thomas B. K. Ringe, Philadelphia, Pa., for defendants R. W. Brown, Delaware, L. & W. R. Co., Erie R. Co., Chesapeake & O. Ry. Co., Joseph A. Fisher, Reading Co., New York, C. & St. L. R. Co., Virginian Ry. Co., Wheeling & L. E. Ry. Co. and Lehigh & H. R. Ry. Co.

Lewis M. Stevens, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants Canadian Pac. Ry. Co., New York, N. H. & H. R. Co., Maine Cent. R. Co., Boston & M. R. Co. and Delaware & Hudson R. Co.

John G. Williams, Philadelphia, Pa., for defendants Akron, Canton & Youngstown R. R. Co.

Paul Bedford, Wilkes Barre, Pa., John Lewis Evans, Philadelphia, Pa., for defendant New York, O. & W. R. Co.

C. Brewster Rhoads, Montgomery, Mc-Cracken, Walker & Rhoads, Philadelphia, Pa., for defendant Eastern R. R. Presidents Conference.

CLARY, District Judge.

This action, a proceeding under the Sherman and Clayton Anti-Trust Acts, 15 U.S.C.A. § 1 et seq., was filed by the Pennsylvania Motor Truck Association, hereinafter called "PMTA", and 37 individual operators of trucks in and through the Commonwealth of Pennsylvania, nearly all of whom are members of PMTA. The action is brought on behalf of themselves and all others similarly situated against Eastern Railroad Presidents Conference, hereinafter called the "Conference", all of the railroads represented in the Conference, several present and past presidents of the said railroads individually, and Carl Byoir & Associates, Inc., hereinafter called "Byoir", a publicity agent employed by the Conference. The suit asks for an injunction and treble damages. The railroads involved, approximately 35 in number, operate in the northeastern section of the United States, north of the Potomac and east of the Ohio rivers. The complaint alleges that in or about May of 1949 the defendant railroads embarked upon an illegal conspiracy to monopolize the business of transportation of freight and passengers in the northeastern section of the United States, the object of the conspiracy and concert of action of the defendants being to secure such a monopoly by destroying interstate competitive highway transportation including the businesses of the plaintiffs. Over 20 preliminary motions have been filed which may be grouped as follows:

(a) Motions to dismiss for failure to state a cause of action,

(b) Motion of the Conference, an unincorporated association, to dismiss for improper venue, insufficiency of service of process, and lack of jurisdiction over the person,

(c) Motions of various railroad corporation defendants to dismiss for improper

venue, for lack of jurisdiction, or, in the alternative, to quash return of service of summons,

(d) Objections to interrogatories,

(e) Motions for more specific answers to interrogatories,

(f) Motions to compel answers on discovery depositions.

Since the three latter categories involve discovery matters, they will be treated separately in an order to be filed later. This opinion will discuss the first three sets of motions.

(A) Motions to Dismiss for Failure to State a Cause of Action

 Motions by the Erie Railroad Company, Reading Company, New York, Chicago & St. Louis Railroad Company, R. W. Brown, Delaware, Lackawanna & Western Railroad Company, Joseph A. Fisher, Eastern Railroad Presidents Conference, The Virginian Railway Company, Wheeling & Lake Erie Railway, Chesapeake & Ohio Railway Company, and the Lehigh & Hudson River Railroad, have challenged the sufficiency of the complaint, contending that it is defective in that it fails to state sufficient facts upon which relief can be granted. Since these motions go to the fundamentals of the case, they will be first considered. In the determination of the motions, only the allegations of the complaint itself will be considered without regard to depositions subsequently taken.

The complaint, briefly summarized, first identifies the parties and their respective relations to the transportation of passengers and freight in the northeastern section of the United States. Byoir is identified as a publicity agent with its principal office at 10 East 40th Street, New York City. Jurisdiction is averred under the Sherman and Clayton Acts, supra. The complaint then charges that in May of 1949 the defendants embarked upon an illegal conspiracy in violation of the anti-trust laws of the United States, the purpose of the conspiracy being to eliminate the plaintiffs and those similarly situated, as competitors in the field of the hauling of freight, and to carve out exclusive monopolistic spheres of operation in the freight transportation business of the United States, so that railroads would have a monopoly on freight hauling in interstate commerce. To that end, the complaint charges, the Conference appointed a committee on competitive transportation for the carrying out of the conspiracy and retained defendant Byoir as its public relations agent for the express purpose of effectuating the object of the conspiracy. Byoir in conjunction with the Conference and the railroads, acting through their presidents and/or trustees, embarked upon a campaign designed specially to impede the operation of the trucker plaintiffs in every possible way, and in pursuance thereof, among other things, vilified and defamed the plaintiffs by circulation to the public generally, to public officials, and to suppliers and customers of the plaintiffs, of false and malicious reports of and concerning the plaintiffs in their business of hauling freight; formed so-called "independent" citizens groups organized to circulate false and malicious propaganda attacking the plaintiffs, in fact composed and prepared by Byoir on behalf of the railroads, but made to appear to emanate from such independent sources; sought to secure the passage of legislation favorable to the railroads and injurious to the truckers through the instrumentalities of the so-called "independent organizations"; attempted to and actually prevented the passage of legislation in Pennsylvania favorable to the truckers by bribery of public officials and officials of independent organizations, all to the end that the defendants might bring about the destruction of the business of the plaintiffs and the elimination of them as competitors. The complaint further avers that this conspiracy has continued from 1949 to the present day, has resulted in disparaging the plaintiffs' business in the public mind, has created great public hostility to the plaintiffs, has interfered with the legitimate conduct of their business and the furtherance of their business, has resulted in increased cost to shippers and consumers, particularly in areas not served by the railroads, has increased the expense of operation by the plaintiffs, and finally has

742

caused loss of accounts and profits and prospective profits to the plaintiffs.

The motions to dismiss are based upon the ground that the complaint fails to allege facts constituting a cause of action under the Sherman or Clayton Acts in that (1) it fails to aver any specific damage to any individual plaintiff or to the public and (2) the defendants' activities complained of involve primarily attempts to influence legislation, which activities do not fall within the scope of the anti-trust laws and are within the protection of the First Amendment to the Constitution of the United States.

 In considering these motions, the Court must accept as true the allegations of the complaint and if the allegations of ultimate facts would justify a recovery then the motions should be overruled. The courts have consistently recognized the difficulty in anti-trust actions in setting forth in precise detail acts which constitute alleged violations of the anti-trust laws. In light of the liberality of pleadings permitted by the Federal Rules of Civil Procedure, 28 U.S.C., a pleader is not required to set out in detail the acts complained of nor the circumstances from which he draws the conclusions that violations of the Acts of Congress have actually occurred and the pleader has been damaged. Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419. In determining the sufficiency of a complaint in a case of this nature, a plaintiff must be given liberal latitude in the pleadings, since it is inherent in such action that all of the details and specific facts relied upon cannot properly be set forth as part of the pleadings. Brownlee v. Malco Theatres, D.C., 99 F.Supp. 312.

 Considering first the contention of the defendants that their activities in attempting to influence legislation do not fall within the scope of the anti-trust laws, their argument in that regard may be briefly stated as follows. It is legal to attempt to influence legislation and, being legal, their activities to accomplish that end cannot be the basis of a charge of violation of the anti-trust laws. In making this contention the defendants miss the fundamental issue of an anti-trust case, whether there is concert of action for a purpose prohibited by the Acts, i. e., for the purpose of effecting a restraint of trade. The confusion of means and objective were commented upon by Chief Judge Forman in the case of Slick Airways v. American Airlines, D. C., 107 F. Supp. 199, at page 207:

"The defendants misconceive the nature of the complaint by confusing the means allegedly used with the result to be achieved. * * * It is in this that they fall into error for these alleged acts rather constituted the means and methods by which the defendants conspired to drive the plaintiff out of business in violation of the anti-trust laws."

If it can be shown that an agreement, combination or conspiracy has been formed for the express purposes prohibited by the Act, the legality of the means becomes unimportant. Here, even if the defendants' activities with regard to influencing legislation were the only activities complained of (which they are not), those activities could conceivably be within the proscription of the anti-trust statutes, *if done for the purposes prohibited by the anti-trust laws*, i. e., to eliminate competition.

Apparently, a similar argument was made before Judge Forman, that defendant's appearance before the Civil Aeronautics Board to block and delay the issuance of a certificate of convenience and necessity to the plaintiff to act as a common carrier was proper and legal. Judge Forman disposed of that contention in the following language, 107 F.Supp. 199, at page 214:

"While it may be questioned whether any of this alleged activity by defendants of itself constituted illegal conduct, it is fundamental, as previously noted, that legal means may be utilized to accomplish the unlawful objective of conspiracy, American Tobacco Co. v. U. S., supra, 328 U.S. [781] at page 809, 66 S.Ct. 1125, 90 L. Ed. 1575, and this court cannot deprive the plaintiff of its right to attempt to prove that these alleged acts were part

of the total acts undertaken to effectuate the alleged conspiracy."

Applying those principles, without confusing legality of means with illegality of object, the complaint is clearly sufficient. That the plaintiffs and defendants are in direct competition with each other in the business of long-distance hauling of freight intra and interstate needs no elaboration. It is a matter of common knowledge. If the defendants can succeed in influencing legislation which has the effect of increasing the operating costs of the plaintiffs, the result would necessarily be to put the plaintiffs in a less favorable competitive position for the carrying of freight. The complaint alleges that the effect of the veto of the so-called "Big Truck Bill" in Pennsylvania has been to increase plaintiffs' operating costs and to put them in an unfavorable position in competition with the defendants in the long-distance hauling of freight. That fact alone would not be sufficient to state a cause of action under the anti-trust laws. It must be shown that the defendants' activities were done with the intent and for the purpose of restraining trade and commerce. Plaintiffs have alleged that defendants' activities in influencing and attempting to influence legislation were for that specific purpose. That plaintiffs may have difficulty in proving that allegation at time of trial does not warrant a summary disposition of the case at this juncture.

The complaint moreover does not stop with the charge that the defendants have influenced legislation for the purpose of putting plaintiffs in an unfavorable competitive position. It alleges that the defendants have engaged in other activities, conducted as part of the conspiracy, and designed for the specific purpose of driving the plaintiffs out of the business of long-distance hauling of freight. Those allegations in sufficient detail have charged, among other things, the formation of so-called "independent citizen groups" which were mere pawns of the defendants in circulating information derogatory to the plaintiffs, dissemination of false information to customers of the plaintiffs for the same purpose, the organization of groups to protest the use of the highways by plaintiffs' "big trucks" and bribery of public officials and officials of independent organizations to accomplish the same purpose of driving the plaintiffs out of competition with the defendants. In sum, therefore, the complaint is that the defendants, in violation of the anti-trust laws, have conspired to exclude plaintiffs from the field of long-distance hauling of freight and thereby eliminate competition.

In a very comprehensive opinion in the case of American Tobacco Co. v. United States, 328 U.S. 781, at pages 809–810, 66 S.Ct. at page 1139, Mr. Justice Burton speaking for the court set forth the nature of the prohibitions of the Sherman Act in the following language:

"It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns. It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition. No formal agreement is necessary to constitute an unlawful conspiracy. Often crimes are a matter of inference deduced from the acts of the person accused and done in pursuance of a criminal purpose. Where the conspiracy is proved, as here, from the evidence of the action taken in concert by the parties to it, it is all the more convincing proof of an intent to exercise the power of exclusion acquired through that conspiracy. The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealings or other circumstances as well as in any exchange of words. U. S. v. Schrader's Son, 252 U.S. 85, 40 S.Ct. 251, 64 L.Ed. 471. Where the circumstances are such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or

a meeting of minds in an unlawful arrangement, the conclusion that a conspiracy is established is justified."

■ While at the trial of the issues, it may be determined that the acts of the defendants were within limits of fair competition and while the evidence then adduced may fail to prove the existence of a conspiracy, it is sufficient in order to defeat a motion to dismiss that the complaint alleges facts which, if proved, would justify a recovery under the anti-trust laws. The plaintiffs are entitled to their day in court and the opportunity to substantiate their charges. Certainly, at this early stage of the proceedings, the defendants have not sustained their position that the plaintiffs should be summarily foreclosed.

■ The second aspect of the motion raises the question as to whether the complaint sufficiently alleges damage to each individual plaintiff and to the public generally. With respect to damage to the public, this problem affords little difficulty. The complaint alleges, in addition to damages to plaintiffs, a resultant increase in the cost to shippers and consumers of all commodities necessary to life, including clothing and food, a high percentage of which reaches consumers only by carriage in motor trucks. Certainly, if the effect of the conspiracy is to increase cost of operation of the truckers, thereby increasing consumer's cost, an injury to the public is effected. This one allegation of injury to the public disposes of defendants' contention. It would have been sufficient merely to allege increased cost of transportation to the users of that commodity, the shippers, to satisfy the requirement of showing injury to the public.

In support of their position that no injury to the public has been alleged, defendants have cited the cases of Arthur v. Kraft-Phenix Cheese Corp., D.C., 26 F.Supp. 824; Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236; Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519; Abouaf v. J. D. & A. B. Spreckels Co., D.C., 26 F.Supp. 830. In each of these cases it is clear from the facts that the injury complained of was a personal injury to the plaintiff alone with no effect on the public. For example, in the Shotkin case, the plaintiff had a distributor's agreement for the sale of incandescent lamps with Westinghouse Electric & Manufacturing Co. The Westinghouse Company cancelled the agreement and refused to furnish lamps to the plaintiff. The court there held that the pleadings showed a personal grievance on the part of the plaintiff based upon the defendant Westinghouse's refusal to transact business with him, with no evil consequence to the consuming public. The other cases cited are of similar import and furnish no precedent for the present case.

As to the defendants' argument that no specific damage to individual plaintiffs is alleged, it would appear that that argument is answered by the language of Mr. Justice Sutherland in the case of Story Parchment Co. v. Paterson P. Paper Co., 282 U.S. 555, at page 563, 51 S.Ct. 248, at page 250, 75 L.Ed. 544:

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Eastman Kodak Co. [of New York] v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 [691]."

Plaintiffs have alleged generally that they have been financially damaged by defendants' activities by increased expense of operation and by loss of accounts with resultant loss of profits and prospective profits. They have further alleged that these damages are presently incapable of exact ascertainment but will be proved at

time of trial. These are specific items and categories of damage which may be capable of proof at time of trial.

The cases cited by defendants in support of their argument on this point, Keogh v. Chicago & Northwestern Railway Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Brownlee v. Malco Theatres, supra; Camfield Mfg. Co. v. McGraw Electric Co., D.C., 70 F.Supp. 477, are readily distinguishable on their facts. In the Keogh case, Mr. Justice Brandeis pointed out that the claimed damage was purely speculative for the reason that if railroad rates had been lower, all plaintiff's competitors would have been put on a parity with him and no court or jury could say that, if the rate had been lower, Keogh would have enjoyed the difference between the rates or that any other advantage would have accrued to him, for the benefit might have gone to his customers, or conceivably, to the ultimate consumer. In the Brownlee case, plaintiff was not in the business which he contended was monopolized and therefore was not within a class which would be affected by any monopolistic practices. In the Camfield case, it was held that plaintiff could show no damage since, although not licensed by the manufacturer, he was free to sell at any price, either the same, or higher or lower, than the price fixed by the manufacturer in its agreements with licensees.

All motions to dismiss for failure to state a cause of action will, therefore, be denied.

(B) Motion of the Conference, an Unincorporated Association, to Dismiss for Improper Venue, Insufficiency of Service of Process, and Lack of Jurisdiction over the Person

 I am asked to rule on the motion of the Eastern Railroad Presidents Conference to dismiss for improper venue, insufficiency of service of process, and for lack of jurisdiction over the person on the basis of affidavits filed in support of the said motion contradicting allegations of the complaint and which affidavits in turn are contradicted by allegations in affidavits by plaintiffs' attorneys in opposition to the motion. The several aspects of the motion, while not specifically so labelled, are filed pursuant to the provisions of Rule 12(b)(2), (3) and (5). With respect to the question of venue, suits under the anti-trust laws against unincorporated associations are governed by the provisions of Section 4 of the Clayton Act, 15 U.S.C.A. § 15, and may be brought by an injured private litigant "in the district in which the defendant resides or is found or has an agent * *". It is argued on behalf of the Conference that none of the above requisites is satisfied with respect to the Conference. The affidavits in support of, and those in opposition to, the motion to dismiss lay particular stress on the nature and degree of the activities of the Conference in this district, for the question of whether an unincorporated association may be "found" in a particular place depends upon whether it does a substantial portion of its business there. Sperry Products, Inc. v. Association of American Railroads, 2 Cir., 132 F.2d 408, 145 A.L.R. 694. Defendant's affidavits state that the Conference transacts no business in Pennsylvania, while plaintiffs' affidavits and the allegations of the complaint just as earnestly assert that much of the business of the Conference (which plaintiffs allege is in business for the express purpose of devising ways and means of competing with plaintiffs and others) is transacted here. It may be noted at this point that affidavits on both sides are almost devoid of specific statements of fact and allege general conclusions. I would have extreme difficulty in resolving the issues thus presented if indeed I had the power or authority to do so on conflicting affidavits. See Hart & Co. v. Recordgraph Corporation, 3 Cir., 169 F.2d 580, in which it was stated at page 581:

"It is well-settled that on motions to dismiss and for summary judgment, affidavits filed in their support may be considered for the purpose of *ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue*. An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well-pleaded facts in the complaint."

Defendant has characterized that expression by the Court of Appeals for this Circuit as dictum since that Court was dealing with a motion for summary judgment. But dictum though it may be, I do not feel inclined to disregard what to me appears the clear statement of applicable law by the appellate court. Consequently, I conclude that I have no power to resolve important fact issues, even those relating to venue and service of process, on conflicting affidavits. This conclusion is buttressed by the footnote statement by the Court of Appeals in Paramount Pictures v. Rodney, 3 Cir., 186 F.2d 111, at page 113, likewise labelled dictum by defendant, that

"The complaints, defendants' affidavits and an affidavit filed by counsel for the plaintiffs seem to raise an issue of fact within the purview of the Scophony decision as 'to whether the five defendants referred to were transacting business in Texas. This issue could have been resolved only by the taking of oral testimony."

In light of those clear expressions by the Court of Appeals for this Circuit as to the power of the trial court to resolve fact issues on motions to dismiss on the basis of conflicting affidavits, I cannot, on this state of the record, determine that the Conference was not "found" in this district, nor can I find that service of process, made upon Mr. Franklin, has not been made upon an "officer" of the Conference. The motion of the Conference to dismiss for lack of jurisdiction over the person, for improper venue, and for insufficiency of service must, therefore, be denied.

While Rule 12(d) provides that the defenses above enumerated may be considered by the court before trial, it provides further that the court may defer the hearing and determination of such issues until the trial. From the pleadings and arguments on the various motions to date, it is apparent that a preliminary hearing on these matters would result in a needless duplication of testimony, and the matters could be best determined at the time of trial on the merits of the alleged conspiracy. The hearing on these issues will, therefore, be postponed until time of trial.

(C) Motions of Various Railroad Corporation Defendants to Dismiss for Improper Venue, for lack of Jurisdiction, or, in the Alternative, to Quash Return of Service of Summons

Eight of the defendant railroad corporations have filed motions to dismiss for lack of venue and for want of jurisdiction over the person of the defendants or, in the alternative, to quash return of service of process. Certain affidavits have been filed by the defendant railroads, and extensive answers to searching interrogatories have been filed, none of which have been controverted by the plaintiffs. While the plaintiffs in their briefs have asked that the determination of these issues be deferred to time of trial when oral testimony could be taken to supplement the answers made to the interrogatories, I feel that no real challenge has been made to the facts now in the record and these motions, unlike those of the Conference, can be disposed of at this time.

These motions present the ever-vexatious and oft-litigated but never settled question as to what constitutes the "doing" or "carrying on" of business in a district by a corporation so that it may be said to be "found" therein, and a consideration of the ephemeral distinction between "doing" and "transacting" business. The latter distinction becomes of extreme importance in this case in view of the provision of Section 12 of the Clayton Act, 15 U.S.C.A. § 22. Prior to the passage of the Clayton Act, Section 7 of the Sherman Act provided coextensive limitations as to venue and service of process. Section 12 of the Clayton Act enlarged the venue provision by the addition of the words "or transacts business" but retained the existing limitation as to service of process, i. e., limited to the district of which a corporation is an "inhabitant" or where it may be "found". United States v. Scophony Corporation, 333 U.S. 795–820, 68 S.Ct. 855, 92 L.Ed. 1091. Mr. Justice Rutledge, 333 U.S. at page 807, 68 S.Ct. at page 861, following the ruling of the Supreme Court in Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L. Ed. 684, construed the words "transacts

business" as having a much broader meaning for establishing venue than the concept of "doing business" denoted by "found" under the pre-existing statute and decisions. He stated that a corporation is engaged in "transacting" business in a district " * * * if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character". He pointed out that by substituting practical, business conceptions for the previous hair-splitting legal technicalities encrusted upon the "found"—"present" —"carrying-on-business" sequence, the Supreme Court in the Eastman Kodak case had yielded to and made effective the remedial purpose of the Congress to relieve persons injured through corporate violations of the anti-trust laws from the often insuperable obstacle of resorting to distant forums for redress of wrongs done in their own places of business or residence. He also pointed out the extraterritorial effect of the service of process provisions of Section 12 were such that once venue was established in a district, service of process could be made in a foreign district of which the corporation was an inhabitant, even in a judicial district of another state. The case recognized that the words "doing business" and "found" had technical connotations and as used in the statutes required an interpretation somewhat at variance with their commonly accepted meanings. Since the instant case is based upon the anti-trust laws, the Clayton and Sherman Acts, the much broader venue provisions of those Acts as embodied in Section 12 of the Clayton Act must govern and the determination of these motions must be made under the rules laid down in the Scophony case.

The eight railroads involved in these motions have all presented different factual situations which, however, justify a broad classification of the railroads into four categories: (1) New York, New Haven & Hartford Railroad Company, Boston & Maine Railroad, and Maine Central Railroad Company; (2) Delaware & Hudson Railroad and New York, Ontario & Western Railway; (3) The Akron, Canton & Youngstown Railroad Company and The Virginian Railway Company; (4) Canadian Pacific Railway Company.

In considering the first group, the facts in the record establish that each has an office in Philadelphia, which is listed in building and telephone directories, and is carried in the literature and timetables of the railroads as one of their established offices. The employees in each office regularly solicit business for their respective railroads in the Eastern District of Pennsylvania. In addition to such solicitation, they answer inquiries, trace shipments, arrange for diversions of freight, and receive complaints, most of which are transmitted to the home office for attention. The record shows that these offices have been continuously maintained in this district for many years, that the offices have been staffed by the employees of the respective railroads and their work is exclusively in the interest of their employers. The record also establishes that each of these offices has been instrumental in obtaining a substantial amount of freight and passenger business for the respective railroads. It is clear, therefore, that the activities of these railroads constitute a continuous course of conduct, at least as extensive as the activities of the Eastman Kodak Company in the Eastman case supra, which activities the Supreme Court of the United States held to constitute "transacting business" within the meaning of Section 12 of the Clayton Act. Venue, therefore, is properly laid in this district as to the four named railroads in that they are "transacting business" in this district within the meaning of Section 12 of the Clayton Act.

For this Court to obtain jurisdiction of each defendant, however, there must be effective service. Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. Recognizing that Section 12 of the Clayton Act did not enlarge the existing limitations as to service of process present in Section 7 of the Sherman Act, we proceed now to a consideration of the question as to whether the defendants are "doing business" in this district so that they may be "found" here for purposes of effective service of process. None of the three railroad defendants is an inhabitant of this district, all being foreign corporations which have never

registered to do business in the Commonwealth of Pennsylvania. In many respects their activities are similar to those of the Chicago, Burlington & Quincy Railway in Green v. Chicago, Burlington & Quincy Ry. Co., supra. While, as stated by Judge Grim of this Court in Moore v. Atlantic Coast Line R. Co., D.C., 98 F.Supp. 375, the authority of the Green case has been questioned by several circuits, Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926; Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139; Perkins v. Louisville & N. R. Co., D.C. Cal., 94 F.Supp. 946, this district has rather consistently followed the Green case. The holdings in the Frene v. Louisville Cement Co., Hutchinson v. Chase & Gilbert, and Perkins v. Louisville & N. R. Co. cases, supra, seem to sustain the proposition that mere solicitation of business when substantial and conducted as a regular and continuous course of business, without more, constitutes "doing business" within a district in the jurisdictional sense so as to subject such a defendant corporation to service in that district. However, because of decisions in this district, indicating a strict adherence to the ruling in the Green case, despite the views expressed in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, as it relates to the concept of "doing business", I feel constrained in this case to find that the named defendants are not "doing business" and may not be "found" within this district and are therefore not subject to service of process here. I do this fully recognizing that the Supreme Court has recently indicated a more practical approach to that problem. Cf. International Shoe Co. v. Washington, supra, and the language of Mr. Justice Black in the dissenting opinion in Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900.

The motions to quash the return of service as to the three defendants will be granted but it will be without prejudice, however, to the plaintiffs' taking whatever steps are necessary to effect proper service in the appropriate district, it appearing that extraterritorial service of process is permissible. See the Scophony and Eastman Kodak cases supra.

In a second category are the Delaware & Hudson Railroad and the New York, Ontario & Western Railway. The Delaware & Hudson Railroad, like the three in group (1), maintains an office in Philadelphia which performs the same general and regular functions outlined in the discussion concerning that group. I would have no hesitancy in finding that the Delaware & Hudson Railroad "transacts business" within this district, but there is an additional ground for holding that venue is properly laid in this district. Both railroads have registered to do business in the Commonwealth of Pennsylvania. Venue, therefore, is properly laid in this district under the provisions of 28 U.S.C. § 1391(c). See Lipp v. National Screen Service Corp., D. C., 95 F.Supp. 66. However, service of process in this case was not made either upon the registered agent or at the registered place of business of either corporation in Pennsylvania. In the case of Delaware & Hudson Railroad, service was made at its Philadelphia office, and service on the New York, Ontario & Western Railway was made at its office in Pittsburgh. Since neither corporation is "doing business" in the district in which service was attempted, service was improperly made. The respective motions to quash the return of service, therefore, will be granted without prejudice, however, to the plaintiffs' taking whatever steps are necessary to effect proper service. In making this ruling, I am mindful of the contention made by the attorney for the New York, Ontario & Western Railway that this Court lacks jurisdiction over that railroad since it is in reorganization proceedings in a New York Federal Court. However, no stay order by that court has been brought to my attention. The question of the exclusiveness of the jurisdiction of the bankruptcy court is, therefore, not before me.

In the third category, The Virginian Railway Company and The Akron, Canton & Youngstown Railroad Company, a slightly different problem, both as to venue and service of process, is present. Neither

railroad maintains an office in the Eastern District of Pennsylvania. Each does, however, have an office in the Western District of Pennsylvania. Occasionally employees of those offices solicit business for the respective railroads in the Eastern District. Neither railroad has registered to do business in Pennsylvania, nor has an authorized agent been appointed for service of process. Adopting the practical business standards approach of the Scophony and Eastman Kodak cases, I find that the activities of these two defendants are not such as to constitute "transacting business" within the Eastern District of Pennsylvania, nor does either defendant come within any of the general venue provisions of the Judicial Code. The motions to dismiss for lack of venue as to these two railroads will, therefore, be granted.

The fourth and final category involves only the Canadian Pacific Railway Company. Since 1890 this company has continuously maintained an office and staff of employees in Philadelphia. In addition to the activities outlined for group (1), the Canadian Pacific performs other services. It issues bills-of-lading, receives prepaid payments of charges on freight to be carried over its lines, maintains a bank account in its name in this district, has handled a substantial number of inquiries and complaints in each of the past three years, handled a substantial amount of money through its office, and originated during the past three years in this district approximately 23,000 carloads of freight in each year. It appears, therefore, that this defendant conducts many activities over and above the mere solicitation of business and the transactions are of such a substantial nature that this defendant is "doing business" and may be "found" in this district. See Moore v. Atlantic Coast Line R. Co. supra. Venue, therefore, is properly laid here and the service of process is valid.

There is one other point raised by the motion of Canadian Pacific to quash service of process which requires but little comment. When the process server (an attorney specially designated by this court) attempted to make service, he inquired at the office of the defendant as to the person in charge thereof, and served the person, a Chief Clerk of the Freight Department, who said that he was in charge of the office. It appears that another employee then present in the office, the Passenger Agent, "outranked" the person served. For that reason, defendant contends that the service was improper. There is no question but that the "ranking" employee was promptly notified of the service. In any event, it is sufficient that a responsible person, who declared himself to be in charge of the office, was served. The motion of the Canadian Pacific to dismiss for improper venue and to quash return for service of process will, therefore, be denied.

An appropriate order will be entered.