PARMELEE TRANSPORTATION COMPANY, a Delaware Corporation, Plaintiff,

v.

John L. KEESHIN, Hugh W. Cross, Howard E. Simpson, Paul E. Feucht, Wayne A. Johnston, Fred G. Gurley, Railroad Transfer Service, Inc., a Delaware Corporation, The Atchison, Topeka and Santa Fe Railroad Company, a Kansas Corporation, The Baltimore and Ohio Railroad Company, a Maryland Corporation, Chicago and North Western Railway Company, a Wisconsin Corporation, Illinois Central Railroad Company, an Illinois Corporation, The New York Central Railroad Company, an Illinois, New York, Ohio, Indiana, Pennsylvania and Michigan Corporation, The Pennsylvania Railroad Company, a Pennsylvania Corporation, Western Railroad Passenger Association, Chicago Terminal Lines, an unincorporated voluntary association, and John Doe, Defendants.

No. 56 C 323.

United States District Court
N. D. Illinois, E. D.
Sept. 19, 1956.

Lee A. Freeman, John Paul Stevens, Howard Hoosin, Chicago, Ill., Herbert B. Lazarus, New York City, of counsel, for plaintiff.

Marvin A. Jersild, Richard O. Olson, Richard J. Murphy, Wayne M. Hoffman, Alvin Bruce Bush, Chicago, Ill., for defendant New York Cent. R. R.

Floyd E. Thompson, Albert E. Jenner, Jr., and Philip Tone, Chicago, Ill., for certain defendants.

Noah Walker, M. A. Garvey, D. J. Parker, Chicago, Ill., of counsel, for Harold E. Simpson and Baltimore & Ohio R. R.

Fred O. Steadry, R. W. Russell, Edward Warden, Chicago, Ill., of counsel, for Paul E. Feucht and Chicago, N. W. R. R.

Joseph H. Wright, Chicago, Ill., Herbert J. Deany, Robert S. Kirby, Chicago, Ill., of counsel, for Wayne A. Johnston and Illinois Cent. R. R.

Floyd J. Stuppi, Chicago, Ill., of counsel, for Fred A. Gurley and Atchison, T. & S. F. R. R.

Robert H. Bierma and M. J. Haberkorn, Chicago, Ill., of counsel, for Pennsylvania R. R.

Charles F. Hough, William F. Coale, Jr., and Louis A. Witry, Chicago, Ill., for Hugh Cross.

Albert J. Meserow, Chicago, Ill., for John L. Keeshin and Railroad Transfer Service.

SULLIVAN, District Judge.

This is a civil anti-trust action to recover damages, and for an injunction, under Title 15 U.S.C.A. §§ 15 and 16, based on alleged violations of the Sherman Act, specifically Title 15 U.S.C.A. §§ 1 and 2. The plaintiff is a transportation company; defendants, so far as it is necessary to enumerate them for the purposes of the present discussion, are: railroad companies with terminals in Chicago; individuals who are presidents of railroads; a former member and chairman of the Interstate Commerce Commission; Chicago Terminal Lines, a voluntary association of railroads whose lines terminate in Chicago; and Railroad Transfer Service, a corporation. The case is now before the Court for a ruling on defendants' motion to dismiss the complaint for failure to state a cause of action.

Sections 1 and 2 of Title 15 forbid respectively "conspiracy, in restraint of trade or commerce among the several States," and combining or conspiring to "monopolize any part of the trade or commerce among the several States"; recovery of damages and the obtaining of an injunction by any person injured by a violation of these sections is authorized by sections 15 and 26 of the same Title.

The interstate commerce with which the complaint is concerned is the business of transporting from one to another of the eight railroad stations in Chicago passengers and baggage in the process of interstate journeys. That this service is "clearly a part of the stream of interstate commerce" and protected by the Sherman Act has been affirmed by the Supreme Court. United States v. Yellow Cab Co., 1947, 332 U.S. 218, 228, 67 S.Ct. 1560, 1566, 91 L.Ed. 2010. The complaint alleges that for over a century before March, 1955, although there was competition for this market, plaintiff Parmelee Company and its predecessors had consistently offered better and cheaper service than any of its competitors, and had accordingly been hired to and did supply it, year after year, to the satisfaction of the defendant railroads and the traveling public. In the spring and summer of 1955 this fortuitous situation was terminated by the intervention of a conspiracy on the part of the defendants.

The nature and effect of this conspiracy, as described in the complaint, were briefly as follows: Hugh W. Cross became a member of the Interstate Com-

merce Commission in April 1946, and was its chairman from July 1, 1955, until his resignation on November 23, 1955. Before March, 1955, John L. Keeshin promised Cross a "valuable consideration" if Cross would persuade the individual railroad presidents to use their influence to cause Chicago Terminal Lines to eliminate plaintiff from the transfer business in Chicago and grant the contract instead to a corporation to be formed by Keeshin. This was to be accomplished by Cross' representing to the railroad presidents that he would exercise his influence on the Interstate Commerce Commission in their favor. During the months that followed, various acts were performed by the defendants to accomplish this objective, and the plan was brought to fruition in October, 1955. At that time, in accordance with the terms of the conspiracy, the transfer contract was granted by Chicago Terminal Lines to Railroad Transfer Service, Inc., which was organized by Keeshin for the purpose of accepting it. This was done without any opportunity to plaintiff to compete for the contract, and despite the fact that the terms of the new agreement were less favorable to the railroads than those under which the plaintiff had formerly operated and those which it was prepared to offer. This is a broad outline of the complaint. Certain of its detailed allegations will be considered in the course of an examination of the objections raised by the defendants.

█ The first of those objections takes the form of a syllogism, and runs as follows: The fact that the contract with Keeshin for terminal transfer services was an exclusive one did not make it illegal as a monopoly; that such contract was made by the railroads acting together did not indicate the existence of a monopoly, since they were not competitors but were in the position of a single buyer, and as such free to deal with whom they pleased; therefore, no violation of the anti-trust laws has occurred. As in all such arguments, the conclusion must fail if either the major

or minor premise is in error. In this case, the major premise may be passed without much ado, since it has been held that the granting of an exclusive contract for the performance of this type of service is not the creation of a monopoly. United States v. Yellow Cab Co., supra, 332 U.S. at page 229, 67 S.Ct. at page 1566. The flaws in the proposition lie in the minor premise: the assumption that the railroads could lawfully act together to grant a transfer contract ignores completely the complaint's allegation that the purpose and effect of that joint action was and is to prevent competition in bidding for contracts for terminal service. Acts otherwise lawful are "within the proscription of the anti-trust statutes, *if done for the purposes prohibited by the anti-trust laws*, i. e., *to eliminate competition*." Noerr Motor Freight v. Eastern R. R. President's Ass'n, D.C.E.D.Pa.1953, 113 F.Supp. 737, 742; see also Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 1952, 198 F.2d 416, 459 and Cape Cod Food Products v. National Cranberry Ass'n, D.C.Mass.1954, 119 F.Supp. 900, 907. That the alleged purpose here is prohibited by the anti-trust laws is perfectly plain. Competition may be as effectively eliminated by preventing it from coming into existence as by killing it after it is flourishing; and these alternate methods of execution are equally repugnant to the anti-trust laws. Noerr Freight, supra; American Federation of Tobacco Growers v. Neal, 4 Cir., 1950, 183 F.2d 869, 873; United States v. Griffith, 1948, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; American Tobacco Co. v. United States, 1946, 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575.

██ Certainly the defendant railroads may deal with whom they please, and are not compelled to enter into a contract with plaintiff if they do not wish to do so. What they may not do, and what it is alleged that they have done, is to deliberately close, to the plaintiff and to everyone except Keeshin, competition in an important field of interstate commerce. As the Supreme Court remarked

in United States v. Yellow Cab Co., supra,—

"It is true, of course, that exclusive contracts for the transportation service in question are not illegal [citation]. But a conspiracy to eliminate competition in obtaining those exclusive contracts is what is alleged in this case and it is a conspiracy of that type that runs afoul of the Sherman Act." 332 U. S. at page 229, 67 S.Ct. at page 1566.

An examination of the complaint also reveals the weakness of the assumption that the several defendants were in the position of single buyers. It is alleged that the railroads planned and achieved the illegal exclusion from competition in concert with Keeshin (a prospective competitor of plaintiff), and Cross. The right to deal with whom one pleases does not include "agreeing or combining with another person in order to deprive a third person of a complete freedom of contract." United States v. Interstate Circuit, Inc., D.C.N.D.Tex. 1937, 20 F.Supp. 868, 872. And quite aside from the parts allegedly played by Keeshin and Cross, it is clear that noncompetitors subject themselves to the prohibitions of the Sherman Act when they conspire to restrain the trade of a third person, United States v. General Motors, 7 Cir., 1941, 121 F.2d 376; United States v. New York Great A. & P. Tea Co., 5 Cir., 1949, 173 F.2d 79, 88. The railroads, in short, were not free to "create artificial conditions, which necessarily impede or burden" interstate commerce, United States v. Patten, 1913, 226 U.S. 525, 541, 33 S.Ct. 141, 144, 57 L.Ed. 333, and this is the result of the conduct described in the complaint.

Defendants' next argument, to which they devote considerable space in their briefs, is stated by them as follows: "That the railroads were induced by alleged improper influence exerted upon them by a third party to choose Transfer rather than Parmelee did not convert the otherwise lawful conduct of the railroads into a Sherman Act violation." This conclusion is based on the assumption that their conduct was lawful except for the improper motives alleged; since it has just been held that it was not "otherwise lawful," but on the contrary illegal, the argument fails and must be disregarded. If the effect and purpose of a series of acts is to restrain or monopolize interstate commerce, the motive which inspires it, whether good or bad, is irrelevant. Noerr Motor Freight, supra; Cape Cod Food Products, supra.

It is urged that the complaint is fatally defective in that it fails to allege an injury to the public as opposed to a merely private wrong; and of course such an allegation is required. Fedderson Motors, Inc., v. Ward, 10 Cir., 1950, 180 F.2d 519. In the instant case, however, the requirement has been met. The allegation of the elimination of competition for the contract to provide terminal transfer services is itself sufficient. United States v. Yellow Cab Co., supra. The importance of this service to the traveling public is too clear to require elucidation; and the allegation that its cost increased while service rendered declined manifestly sets forth a public rather than a merely private injury. National Used Car Market Reports v. National Automobile Dealers Ass'n, 1952, 91 U.S.App.D.C. 313, 200 F.2d 359.

Defendants insist with considerable vigor that the complaint must fail because there is no allegation that the plaintiff "would have been awarded the contracts in question but for the wrongful conduct of defendants", and hence there is no adequate support for the claim for damages. Their argument is that, conspiracy or no, the railroads might have awarded the terminal contract to someone other than plaintiff, which they would have had a perfect right to do. This statement of the case, though true, is misleading. It is beyond the power of the plaintiff, or anyone else, to say now with certainty what might or might not have happened had the conspiracy not intervened. Facts have been

alleged from which it would be possible and reasonable to draw the inference that the contract would have been awarded to plaintiff but for the wrongful conduct of the defendants. This is sufficient. Sunbeam Corp. v. Payless Drug Stores, D.C.N.D.Cal.S.D.1953, 113 F. Supp. 31, 43; Story Parchment Co. v. Paterson Co., 1931, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544. The allegations concerning the long and harmonious previous relationship between the parties and of plaintiff's willingness to perform the service for a lower price in themselves go far toward establishing this thesis. For comparable situations, reference is made to: Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 1952, 198 F.2d 416; Story Parchment Co. v. Paterson Co., supra; Bigelow v. R. K. O. Pictures, 1945, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652.

The main brief was filed by the individual railroad presidents and five railroads; other defendants (quite properly and for the purpose of avoiding duplication) have adopted this brief as their own. The New York Central Railroad contends in addition that the complant fails to state a cause of action as to it. This contention must be overruled; paragraphs 31, 32 and 33 of the complaint sufficiently allege the participation of all defendants, including the New York Central, in a past and present conspiracy, Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co., 8 Cir., 1942, 131 F.2d 419; United States v. Maryland State Licensed Beverage Ass'n, Inc., D.C.Md.1956, 138 F.Supp. 685.

For the foregoing reasons, the various objections urged by the defendants are without merit. The complaint on its face states a cause of action under the anti-trust laws. A successful conspiracy to restrain and monopolize interstate commerce by eliminating competition is clearly set forth; that the methods of accomplishing this objective are unusual is not important. The motion to dismiss will accordingly be overruled.