**THILL SECURITIES CORPORATION, on its own behalf, and on behalf of all securities brokers and dealers in the United States similarly situated, Plaintiff,**

*v.*

**The NEW YORK STOCK EXCHANGE, Defendant.**

No. 63–C–264.

United States District Court
E. D. Wisconsin.
April 12, 1968.

E. Campion Kersten, Arlo McKinnon, and Lewis D. Thill, Milwaukee, Wis., for plaintiff.

Victor M. Harding and Robert V. Abendroth, Milwaukee, Wis., for defendant; Milbank, Tweed, Hadley & McCloy, New York City, of counsel.

## OPINION AND ORDER

REYNOLDS, District Judge:

### I. MATTER FOR DECISION

Before this court is a motion by defendant, the New York Stock Exchange, to dismiss this action. The motion raises two issues:

1. Has the defendant been properly served so that this court has acquired jurisdiction over its "person" ?

2. If this court does have jurisdiction, is this district the one in which the action should be tried or, to use the conventional terminology, is venue properly laid in this district?

### II. FACTS

The plaintiff in this case, Thill Securities Corporation, is a broker-dealer in securities but is not a member of the defendant, the New York Stock Exchange. Plaintiff purports to bring this claim as a class action on behalf of itself and all those similarly situated. See Rule 23, Federal Rules of Civil Procedure. The complaint alleges that defendant violated federal antitrust laws in several respects. It demands treble damages under the Clayton Act, 15 U.S.C. § 15, payable to the whole class, amounting to twenty-one million dollars.

On October 18, 1963, the complaint in this action was filed. It was served on

the defendant by delivery to one of its officers at the Exchange's offices, 11 Wall Street, New York City. On December 13, 1963, the pending motion was filed, and the case was assigned to Judge Kenneth P. Grubb of this district. Pursuant to a schedule established by the court, the parties filed briefs and affidavits on the questions raised by the motion. After several communications between court and counsel, the judge advised counsel that he was not disposed to decide these issues on affidavits alone and suggested that they consider using additional discovery procedures to support their respective positions. Since that time, the parties have made extensive use of the discovery devices available under the Federal Rules of Civil Procedure.

After the case had been reassigned to this branch, a status conference was held on October 11, 1966. In 1967 the issues raised by the two pending motions were briefed afresh and are before me on that basis.

### III. QUESTION OF JURISDICTION

The first issue raised by the pending motion is whether this court acquired jurisdiction over the New York Stock Exchange when one of the Exchange's officers was served with a summons in New York.[1]

### A. *Federal Law*

■ If the New York Stock Exchange were a corporation, resolution of this issue would be comparatively simple. In that event, the court could rely on a provision of the Clayton Act which, after referring to "Any suit, action, or proceeding under the antitrust laws against a corporation," provides that "all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. However, it is clear that this section, which is entitled "District in which to sue corporation," applies only to corporations, not to unincorporated associations like the Exchange. E. g. McManus v. Tato, 184 F.Supp. 958 (S.D.N.Y.1959).

■ In the absence of an applicable federal statute, the second sentence of Rule 4(e) of the Federal Rules of Civil Procedure guides federal district courts:

"* * * Whenever a statute * * * of the state in which the district court is held provides * * * for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

In effect, the Rule directs this court to look to the laws of Wisconsin in resolving questions concerning extraterritorial service of process. 2 Moore, Federal Practice, Par. 4.32[2], at 1232 (2d ed. 1967).[2]

---

1. Rule 4(d) (3) of the Federal Rules of Civil Procedure provides that service may be made upon an "unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer" of the association.

2. Before 1963, when the Rule was amended to read as quoted in the paragraph to which this note is appended, doubt had arisen in some districts about whether valid service could be made upon nonresident defendants in federal actions by following the provisions of state law. This district, however, had long recognized that the Federal Rules of Civil Procedure in effect incorporate state long-

arm statutes and compel district courts to apply state law in determining whether extraterritorital service of process is valid. Wisconsin Metal and Chemical Corp. v. DeZurik Corporation, 222 F.Supp. 119 (E.D.Wis.1963) (Tehan, J.); Koepp v. Peters, 193 F.Supp. 296 (E.D. Wis.1961) (Grubb, J.); and see also Farr & Co. v. CIA. Intercontinental de Navegacion de Cuba, S.A., 243 F.2d 342, 347–48 (2d Cir. 1957). Although there was some dispute about the matter at the initial briefing in 1964, it now seems to be agreed that Wisconsin law determines whether the extraterritorial service of process on the defendant Exchange in this federal action was proper.

## B. *State Law*

Section 262.06(7) of the Wisconsin Statutes provides for a manner of serving process on unincorporated associations identical to the one employed by plaintiff in this case which is applicable "where the claim sued upon arises out of or relates to association activities within this state sufficient to subject a defendant to personal jurisdiction under s. 262.05(2) to (10)." Thus, § 262.06(7) points to § 262.05(2) to (10) as the governing provisions for determining when a Wisconsin court has acquired jurisdiction over an unincorporated association by extraterritorial service of process.

 Section 262.05 of the Wisconsin Statutes is entitled "Personal jurisdiction, grounds for generally." Of the subsections of § 262.05, several are arguably applicable.[3] However, the one most closely in point seems to be subsection (4) of § 262.05 which provides for the acquisition of jurisdiction over a defendant—

"In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury either:

"(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

In this case, plaintiff, a Wisconsin corporation, alleges "injury" to its "property"; namely, its business, "within this state," arising out of "act(s)" or "omission(s)" by defendant. Clearly, little else is required, though few cases in point have arisen under the post-1960 version of § 262.05 which is involved here. See Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X International, Inc., 227 F.Supp. 365 (W.D.Wis.1964); cf. Wisconsin Metal & Chemical Corporation v. DeZurik Corporation, 222 F.Supp. 119 (E.D.Wis.1963); but see Travelers Insurance Company v. George McArthur & Sons, 25 Wis.2d 197, 130 N.W.2d 852 (1964).

In this situation, the official "Revision Notes" for § 262.05(4), prepared by Professor G. W. Foster, Jr., of the University of Wisconsin Law School who served as reporter for the Wisconsin Judicial Council in the preparation of the revised Chapter 262, furnish perhaps the best guidance to the meaning of that provision. The "Revision Notes" for § 262.05(4) state:

"Three jurisdictional facts are required by this subsection: (i) an act or omission outside the state by the de-

---

3. For example, it is arguable that the New York Stock Exchange is a "defendant who when the action [was] commenced: * * * [was] engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise," and thus subject to jurisdiction under subsection (1) (d) of § 262.05. It is also arguable that this action is one "claiming injury to * * * property within or without this state arising out of an act or omission within this state by the defendant," in which the defendant Exchange would be subject to jurisdiction under subsection (3) of § 262.05.

Of course, even if this suit against the New York Stock Exchange were to fall within one of the subsections of § 262.05, due process requirements must still be satisfied for this court to render a valid judgment. But "due process requires only that in order to subject a defendant to judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). It seems clear that this court, consistently with standards of due process, could hear and render a judgment in this case. See, e. g. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Becher Corporation v. Anderson-Tully Co., 252 F.Supp. 631 (E.D.Wis. 1966). Defendant has not chosen to contend otherwise.

fendant or his agent; (ii) an injury to person or property within the state which is claimed to arise out of the foreign act or omission; and (iii) some additional contact, not necessarily related to the injury sued on, which links the defendant to the state. \* \* \*

"The jurisdictional facts required by this subsection call for proof of two contacts between the defendant and the state: (i) the occurrence in the state of the injury which the defendant is claimed to have caused; and (ii) some additional contact not necessarily related to that injury. \* \* \*

\* \* \* \* \* \*

"If the occurrence in the state of the injury sued on is not a sufficient contact, very little more by way of additional contact is required for the exercise of personal jurisdiction in these cases. This concept that personal jurisdiction may be grounded on the contacts made up of the local injury plus something more (often very little more) has grown recently and rapidly out of the older 'doing business' concept.

\* \* \* \* \* \*

"In recent cases involving injury sustained in the state as a result of an act done elsewhere, reliance has been placed on various types of added contacts to sustain jurisdiction. These contacts have included solicitation, of business, servicing equipment within the state and, in some cases, little more than the fact that the defendant enjoyed pecuniary benefit from the efforts of others in the state who sold goods manufactured by the defendant. Sub. (4) relies on such added contacts as those just stated to furnish a basis for jurisdiction in cases where a local injury arises out of some foreign act. \* \* \* "

■■ It would surely surprise the informed layman to be told that no "solicitation or service activities" are carried on in Wisconsin "by or on behalf of" the New York Stock Exchange, or that no

"products, materials, or things processed, serviced, or manufactured" by the Exchange "were used or consumed" in Wisconsin "in the ordinary course of trade." In fact, evidence presented to this court indicates clearly that the Exchange does carry on "solicitation and service activities" in Wisconsin, does service materials used in Wisconsin, and does have contacts with Wisconsin sufficient to satisfy the very slight requirements for "jurisdictional grounds" under Wisconsin law. (See pp. 246–248 of this opinion.) Since these contacts must be related in detail in the next section of this opinion, it is unnecessary to discuss them here. For the moment, it is sufficient to say simply that this court concludes that the defendant Exchange has been validly served and is subject to the jurisdiction of this court.

## IV. QUESTION OF VENUE

The second issue raised by the pending motion is whether venue in a treble damage action by a Wisconsin plaintiff against the New York Stock Exchange is properly laid in this district.

■■■ Section 4 of the Clayton Act, 15 U.S.C. § 15, governs venue in treble damage actions under the antitrust laws against unincorporated associations. E.g. Noerr Motor Freight Inc. v. Eastern R.R. Presidents Conference, 113 F.Supp. 737 (E.D.Pa.1953). According to this statute, venue lies in a district "in which the defendant resides or is found or has an agent \* \* \*." 15 U.S.C. § 15. It is agreed that the New York Stock Exchange neither "resides" nor "has an agent" within this district. Thus the dispute centers on whether it is "found" in Wisconsin. The test for determining whether an unincorporated defendant is "found" within a district is "whether any substantial part of the defendant's activities are continuously carried on [there]." R & E Dental Supply Co. v. Ritter Co., 185 F.Supp. 812, 813 (S.D.N.Y.1959); see also Sperry Products, Inc. v. Association of American Railroads, 132 F.2d 408, 411, 145 A.L.R. 694 (2d Cir. 1942).

This rule is different than the one applied to corporations under another provision of the Clayton Act, namely, 15 U.S.C. § 22. This section provides that venue in treble damage actions against corporations is properly laid, not only where the corporation may be "found," i. e. where it "continuously" carries on a "substantial part" of its activities, but also in any place where it "transacts business." 15 U.S.C. § 22. Cases have clearly established that the venue test for unincorporated associations is somewhat (though perhaps not very much) stricter than the one presently applicable to corporations. Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151, 153 (E.D.Pa.1966); Abrams v. Bendix Home Appliances, 96 F.Supp. 3, 5 (S.D.N.Y. 1951); Winkler-Koch Engineering Co. v. Universal Oil Products Co., 70 F.Supp. 77, 84 (S.D.N.Y.1946); but see American Football League v. National Football League, 27 F.R.D. 264, 267 (D.Md.1961). Thus, although cases dealing with venue for corporate defendants may shed light on the issues here, they are not directly in point.

In the view of this court, the venue statute applicable to this case, 15 U.S.C. § 15, must be considered in the context and in the light of three facts that we deem relevant.

First, generally speaking, the venue provisions applicable to treble damage action under the antitrust laws afford only very limited protection to defendants. As the court stated in Cinema Amusements, Inc. v. Loew's, Inc., 85 F.Supp. 319, 327 (D.Del.1949):

> "The purpose of the wide choice of venue given to plaintiffs in anti-trust litigation was certainly to further the interest of justice by enabling plaintiffs to obtain redress in forums in which they can afford to sue, usually that of their own residence."

In our view, this purpose ought to be in the forefront of our minds in construing the venue provisions of the antitrust laws.

Second, the venue provisions relating to treble damage actions against corporate defendants, as mentioned previously, are extremely broad. 15 U.S.C. § 22. To the extent that large profit-making, centrally controlled, multistate associations, like the New York Stock Exchange, may resemble "corporations" of the kind contemplated by the framers of 15 U.S.C. § 22, it seems proper to construe the provisions applicable to unincorporated defendants, like 15 U.S.C. § 15, generously and broadly.

Third, the touchstone of the concept of "venue" is the fairness to and convenience of defendants, rather than plaintiffs, who have chosen the forum. In deciding the venue question before us, this court has considered the overall fairness of requiring a defendant, like the Exchange, to defend a suit in this forum.

In this context, is the New York Stock Exchange "continuously" carrying on a "substantial part" of its activities in this district? Exhibits, affidavits, and depositions on file with this court, read in connection with applicable precedent, establish that the answer to this question is "Yes."

Defendant has contended that Lorenz v. Watson, 258 F.Supp. 724 (E.D.Pa. 1966), establishes the contrary proposition. In granting a motion by the defendant, the New York Stock Exchange, to dismiss for improper venue, the court in that case construed § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, a venue provision similar to those governing treble damage actions under the antitrust laws. In that case, the court said at page 728:

> "* * * The plaintiffs do not maintain that the Exchange is 'found' within the Eastern District of Pennsylvania, or that it 'transacts business' here, or, finally, that it is an inhabitant hereof. Indeed, it would be difficult for them to so argue in view of the abundance of authorities to the contrary. [Citations omitted.]"

The court went on to decide the issue on different grounds.

Obviously, the quoted remarks are *dicta*. Not only were these statements not the basis for decision, but they expressed conclusions on legal questions apparently not even briefed or argued. Moreover, the court presumably was furnished no information whatsoever about the quantum of the Exchange's activities in the district. Thus, the statements relied upon were poorly informed and singularly unpersuasive on the question of whether the Exchange was "found" in the Eastern District of Pennsylvania and, by analogy, in this district.

Moreover, the "abundance of authority" collected by the judge in support of his *dictum* do not in fact provide support. None of the cases cited dealt with the New York Stock Exchange or, for that matter, with any stock exchange. In both Sperry Products, Inc. v. Association of American Railroads, 132 F.2d 408, 145 A.L.R. 694 (2d Cir. 1942), cert. denied 319 U.S. 744, 63 S.Ct. 1031, 87 L.Ed. 1700 (1943), and Noerr Motor Freight, Inc. v. Eastern R.R. Presidents Conference, 113 F.Supp. 737 (E.D.Pa.1953), the court actually denied motions to dismiss by unincorporated associations, reserving final decision until evidence of "contacts" had been presented. In Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n, 102 F.Supp. 649 (D.Minn.1951), the issue posed was one of jurisdiction, not of venue. Stern Fish Co., Inc. v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa.1966), is, in our view, clearly distinguishable on its facts. The final citation, 1 Moore, Federal Practice, Par. 0.142[5] (2d. ed. Supp.1964), is to a section of a treatise that does no more than discuss the question of venue as to unincorporated associations in general terms.

More nearly in point in our view is American Football League v. National Football League, 27 F.R.D. 264 (D.Md. 1961), in which the court considered the question of whether a "substantial part" of the activities of two California football teams were "continuously carried on" in Maryland. Each of the California clubs played only one game a year in Maryland. Neither of them had any office, telephone listing, bank account, mail address, or resident agent in the district. Nevertheless, the court held that the two teams were "found" in Maryland within the meaning of the same venue statute that is involved in this case. Although the court relied in part on the special character of the business of operating a football team as a member of a league, the case is nevertheless significant and instructive. However, it is not determinative, nor is any other case that has been cited to us.

What is determinative on the question of whether the New York Stock Exchange continuously carries on a substantial part of its activities in this district is the evidence submitted to this court in the form of exhibits, affidavits, and depositions. The evidence is summarized in a portion of plaintiff's brief, pages 10–12:

"B. *Defendant's contacts with the Eastern District of Wisconsin.*

"A great number of contacts between the defendant and the Eastern District of Wisconsin were revealed by the deposition of Robert M. Bishop, vice-president of the Exchange in charge of member firms, and by the 85 exhibits produced by the defendant both during and after the deposition. Some of the most significant contacts are these:

"1. The Exchange enforced the article of its constitution complained of (Art. XV, sec. 1—see Exhibit 84 p. 1092) in the Eastern District of Wisconsin (Bishop deposition pp. 51–2, 55) and thereby caused the injuries which are the subject of this action.

"2. The Exchange charges and collects listing fees, both initial and annual, from some 17 corporations located or doing business in this District, resulting in revenues to the Exchange during 1960 through 1963 of over $223,000. (Bishop deposition p. 33; Exhibit 54)

"3. The Exchange sends account examiners *every year* to each of the

member firm offices in this District to check their compliance with Exchange regulations pursuant to the self-regulatory functions of the Exchange. (Bishop deposition pp. 17, 19, 20, 111; Exhibit 53)

"4. In each of the years 1960 through 1963 the District has been physically visited by employees of the Exchange to solicit various firms in the area to list their stocks or bonds on the New York Stock Exchange. These visits were made by five different employees of the Exchange. Nine firms were solicited in 1961, six in 1962 and one each in 1960 and 1963. (Exhibit 55)

"5. Employees of the Exchange make regular biannual visits to this district to discuss Exchange services and counsel member firms located here on problems relating to Exchange regulations and operations in the Eastern District of Wisconsin. These are designated 'liaison visits' and are part of the Exchanges regular procedures. (Bishop deposition pp. 37–8–9; Exhibit 56; Exhibit 85, p. 934—'Liaison visits")

"6. The Exchange has regularly and continuously placed and paid for advertisements in the Milwaukee Journal and/or Sentinel. It placed seven such ads in 1960, six each in 1961, –62, and –63. (Bishop deposition p. 99; Exhibits 66, 68, 70 and 72). Over the same period the Exchange has also placed ads, about 68 of them, in national periodicals extensively circulated in this District. (Exhibits 67, 69, 71 and 73)

"7. The Exchange regularly and continuously circulates subscription publications in this District for which it charges a fee. Exhibits 82 and 83 are samples of such publications. Exhibit 60 is a list of the subscribers to one of those publications (82) in this District.

"8. The Exchange collects annual dues and other charges and special assessments from its members and member firms in this District. (Bishop deposition pp. 45, 63, 74, 78, 91 and 97–8; Exhibit 61). The total of such charges collected from three member firms in this District was $21,824 in 1960, $27,594 in 1961, $28,545 in 1962 and $34,879 in 1963: a total of over $112,000 over those four years. (Exhibit 61). The total charges collected by the Exchange from *all* subscribers to ticker service in the Eastern District of Wisconsin for that service were $19,056 in 1960, $25,134 in 1961, $26,465 in 1962 and $31,361 in 1963. (Exhibit 63)

"9. The Exchange charges and receives a commission on all stock transactions effected on the Exchange from purchasers and sellers dealing through members or member firms in this District. (Bishop deposition pp. 95–97; Exhibit 84—NYSE Constitution—p. 1075—Art. X, secs. 1 and 2). (Such charges for three of the member firms are shown in Exhibit 61 as described in para. 8, above.)

"10. The Exchange claims and exerts a continuing power and authority to discipline each of the members, member firms and each of the 400 to 500 'registered representatives' in the Eastern District of Wisconsin. (Bishop deposition pp. 113–4; Exhibit 57). It exercised this disciplinary power in this District at least once, in 1963 or 1964. (Bishop deposition p. 112). ('Registered representatives' are employees of member firms who solicit or handle securities business. Exhibit 84, p. 2526, Rule 10.)

"11. The Exchange exercises a continuous strict control over all stock tickers, teleregister systems, electronic stock information inquiry devices and other means of communication between the Exchange and the Eastern District of Wisconsin by requiring Exchange approval of all contracts for such services. Exhibits 7 through 52 are copies of such Exchange-approved contracts. See also Exhibit 62 and Bishop deposition pp. 59, 62, 71–4 and 76–7. The many stock information

communication devices maintained in this District with the approval and sanction of the Exchange, of which the tickers listed in Exhibit 64 are an example, are by law deemed facilities of the Exchange itself. Section 3(a)(2) of the Securities Exchange Act of 1934 provides: 'The term "facility" when used with respect to an Exchange includes * * * any system of communication to or from the Exchange, by ticker or otherwise, maintained by or with the consent of the Exchange), and any right of the Exchange to the use of any property or service.' The quotations sent into this District and elsewhere are themselves the property of the Exchange and so regarded by it. (Bishop deposition p. 89)

"12. During the period 1960 through 1963 the Exchange regularly and continuously sponsored 5 minute radio programs which were broadcast over local radio stations located in this District. There were 26 such broadcasts over that period. (Exhibit 65)

\* \* \* \* \* \*

"Beyond that physical presence, the long arm of the Exchange reaches into the Eastern District of Wisconsin to control very intimately (albeit, for the most part, properly) the day to day operations of each of its members and member firms. It reaps substantial revenues and profits from those members and from the Eastern District companies whose stocks are listed on the Exchange. *During the period 1960 through 1963 it collected from this District for various fees, charges and commissions at least $438,000.* The actual figure is probably double or triple that amount since we have commissions data on only three of the many member firms doing business in this District. A complete list of all member firms doing business in the District may be found at pp. 683–4 of Exhibit 85."

■ It is possible to quarrel with the accuracy and precision of a few items in the above summary (which was, of course, a partisan creation), but its broad outlines are correct. The New York Stock Exchange "continuously" carries on a "substantial part" of its activities in this district. Hence, it is "found" here, and venue is properly laid.

## V. ORDER

IT IS THEREFORE ORDERED that defendant's motion to dismiss must be and it hereby is DENIED.