**Meyer BRAUN, d/b/a Rex the Tailor, Plaintiff-Appellant,**

v.

**Theodore W. BERENSON, d/b/a Gulfgate Shopping Center, et al., Defendants-Appellees.**

No. 28512.

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1970.

539

Jim S. Phelps, Houston, Tex., for plaintiff-appellant.

Abraham G. Levin, New York City, John F. Heard, E. W. Barnett, John L. Jeffers, Jr., M. W. Parse, Jr., Stephen D. Susman, B. J. Bradshaw, Houston, Tex., for defendants-appellees; Baker, Botts, Shepherd & Coates, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is a civil action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble the damages allegedly sustained as a result of a conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The plaintiff Braun (hereafter, the plaintiff) appeals from a judgment of the District Court for the Southern District of Texas in effect dismissing the action as barred by the four-year statute of limitations applicable to civil antitrust suits, § 4B of the Clayton Act, as added by Act of July 7, 1955, c. 283, § 1, 69 Stat. 283, 15 U.S.C. § 15b; and from an order dismissing certain defendants. We reverse and remand for further proceedings.

Defendant Berenson (hereafter, Berenson) leased to defendant National

Shirt Shops of Gulfgate, Inc., (hereafter, National Shirt) space on the main mall of the Gulfgate Shopping Center in Houston, Texas, in 1955. The lease agreement contained an "exclusive clause" which, with some exceptions, purported to give National the exclusive right to retail men's and boys' furnishings and sportswear in the shopping center.[1]

In 1956 Berenson leased to the plaintiff space on a side mall of the shopping center to operate a men's and boys' clothing store. Before making this lease, Berenson secured the permission of National Shirt. Correspondence between Berenson and National Shirt indicated National Shirt gave its permission "with the understanding that it will not in any way affect the terms of our lease with you [Berenson]".

The plaintiff alleges that at this time Berenson and National Shirt entered into what he terms a "secret agreement" whereby the plaintiff would be allowed to lease the side mall space, but would not be allowed to lease additional space or move to any other location in the shopping center for the life of National Shirt's lease, in violation of the federal antitrust laws. He further contends that this "secret agreement", when taken in conjunction with provisions in his own lease prohibiting him from putting another store within a three-mile radius of the shopping center, had the effect of restricting the location, size and growth of his business.

In 1957 the plaintiff attempted to lease a space (hereafter referred to as the "Thornton space") on the corner of the side mall on which he was located and the main mall of the shopping center that had recently become available. He was also approached by the shopping center manager at this time concerning other locations that had or might become available. These spaces were eventually leased to others, although the plaintiff's request was never expressly refused nor the reasons for the refusal explained. The testimony of Thomas Kaplan, Berenson's attorney during this period, indicates, however, that the reason for the refusal was National Shirt's "exclusive clause".

In December, 1960, the Thornton space again became available and the plaintiff requested Berenson to lease it to him. At this time Berenson informed the plaintiff that it was impossible for him to get extra space or move within the shopping center without first obtaining the permission of National Shirt. Plaintiff then went to New York to obtain National Shirt's permission and appar-

---

1. The "exclusive clause" provides as follows:

A. The Landlord covenants and agrees (insofar as and to the extent that it is lawful so to agree) that he will not lease, during the term hereof, any other part of the building of which the demised premises are a part, or any other part of Gulfgate Shopping Center, for the operation of a store or business whose principal business shall be the sale of men's and boy's furnishings and sportswear in the price range presently being sold by the Tenant in a majority of its other stores, and more particularly and without limiting the generality of the foregoing will not lease to any tenant for the operation of a store or business under any name by any of the companies, organizations or stores commonly known as Adam Hat, Woodrow Men's Shop, United Shirt, Wormser Hat, Pye or Zindler, including any store or stores operated under any name by the parent, affiliated or subsidiary company, or any such company, organization or store, their successor and/or assigns; provided, however, that the fact that a tenant in said Shopping Center shall, subsequent to the execution of a lease with the Landlord, become affiliated with, become the parent of, or subsidiary of, or become the successor or assignee, of any such companies, organizations or stores, shall not affect such prior tenancy and/or lease agreement. This provision with respect to other stores is intended to apply to the type of operation presently being conducted by the Tenant in a majority of its other stores and in the price range of such other stores only, and shall have no application whatsoever to the sale of such goods in other stores; and without limiting the generality of the foregoing, it shall have no application whatsoever to Joske Bros. Co., E. S. Levy, W. T. Grant, J. J. Newberry, Bond Stores, Battelstein, Sakowitz and the like, nor to regular clothing stores.

ently reached tentative agreement as to the conditions under which National Shirt would acquiesce in the plaintiff's lease of the Thornton space. However, before the agreement was consummated, Edward L. Marks, an official of the National Shirt Shops chain, visited Houston and "shopped" plaintiff's store. On the basis of this investigation, National Shirt refused to allow the plaintiff to lease the Thornton space.

Again in 1964 plaintiff attempted to obtain a space adjoining his store, but his request was denied, and, again, apparently on the basis of National Shirt's "exclusive clause".

Plaintiff filed suit on October 31, 1964, and on November 11, 1967, the cause was tried on the merits before a jury. This first trial ended in a mistrial due to the inability of the jury to reach a verdict. In response to a motion for a directed verdict made by the defendants during the trial, the District Court entered a Memorandum Opinion ordering a separate jury trial on the statute of limitations issue pursuant to Rule 42(b), Federal Rules of Civil Procedure. The District Court stated the rule to be applied in civil antitrust cases as follows:

* * * The statute of limitations period runs from the commission of an overt act pursuant to the conspiracy which proximately causes injury to the complaining party. Stated in another manner, the limitations period runs from the date when a party first sustains injury or when the cause of action accrues. See e. g. Steiner v. 20th Century-Fox Film Corp., 232 F. 2d 190 (9 CA 1956), and cases cited therein; 2361 State Corp. v. Sealy, Inc., 263 F.Supp. 845 (N.D.Ill.1967) This means that each new overt act arising from the conspiracy which proximately causes a party *new and independent* injuries gives rise to a separate cause of action. The statute of limitations for each cause of action runs from the date of the overt act giving rise to the cause of action. See generally, Crummer v. DuPont,

232 F.2d 238 (5 CA 1955), cert. denied, 350 U.S. 848 [76 S.Ct. 85, 100 L.Ed. 755]; Momand v. Universal Film Exchanges, Inc., supra; Sandidge v. Rogers, 167 F.Supp. 553 (S.D. Ind.1958). This does not mean that the limitations period is delayed from running because damages continue to flow from an original overt act directed against a party. In Muskin Shoe Co. v. United Shoe Machinery Corp., 167 F.Supp. 106 (D.Md.1958), the court stated at page 111:

"The statute of limitations begins to run on the date on which a person first has the right to bring action for such injury, not as each item of damage resulting from such injury is sustained. To allow successive actions as the damages develop would nullify the statute of limitations."

The district court went on to reason that "the overt act from which the plaintiff's cause of action accrued was the defendants' first refusal to plaintiff's request for additional space, such refusal being based on the alleged illegal agreement or conspiracy * * *" because

" * * * the plaintiff suffered no new and independent damages by the continuing refusals of the defendants to consider his requests for additional space". The evidence presented at the second trial was limited to such as was relevant to answer the single interrogatory presented to the jury:

You are instructed the plaintiff contends that he has been denied other space in the Gulfgate Shopping Center because of an agreement among the defendants to limit his expansion, such agreement being evidenced by the exclusive clause in the lease dated March 29, 1955, between Theodore W. Berenson and National Shirt Shops of Gulfgate, Inc., and subsequent correspondence between certain of the defendants dated April 3, 1956, April 4, 1956, and May 2, 1956. For the purpose of this trial, you are to assume the exist-

ence of such agreement, and answer the following interrogatory:

Was one or more of the plaintiff's requests for other space in 1957 denied because of such agreement?

\* \* \* \* \* \*

The jury answered the interrogatory in the affirmative and on the basis of this verdict the district court entered a judgment for defendants.

In the same memorandum opinion, the district court held that there was no fraudulent concealment of the alleged conspiratorial agreement, which would have tolled the running of the statute of limitations as long as the conspiracy remained undiscovered, because "it has not been alleged nor was there any evidence presented at the trial which would indicate any fraudulent concealment on the part of the defendants or any fiduciary duty existing between the plaintiff and the defendants".

In an earlier order, dated November 21, 1967, the district court dismissed individual defendant Edward Marks from the action.

■ The principal issue presented by this appeal is whether the plaintiff's claim for damages is barred by the statute of limitations. Section 15b, Title 15, United States Code provides that "[a]ny cause of action under sections 15 or 15a of this title shall be forever barred unless commenced *within four years after the cause of action accrued.* \* \*" (Emphasis added.) It is well established that an action for civil conspiracy under Section 15 accrues when an overt act violative of the antitrust laws is committed pursuant to the conspiracy which gives rise to new and independent damages to the person against whom the overt act is directed. Hanover Shoe, Inc. v. United Shoe Machinery Corp., M.D.Pa., 1965, 245 F.Supp. 258, aff'd, in part, rev'd in part, 3 Cir., 1967, 377 F.2d 766, aff'd in part, rev'd in part, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); Peto v. Madison Square Garden Corp., 2 Cir., 1967, 384 F.2d 682, cert. den. 390 U.S. 989, 88 S.Ct.

1185, 19 L.Ed.2d 1293; Sherman v. Goerlich's, Inc., E.D.Mich., 1963, 238 F. Supp. 728, 730, aff'd. 6 Cir., 1965, 341 F.2d 988, cert. den. 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74; Garelick v. Goerlich's, Inc., 6 Cir., 1963, 323 F.2d 854; Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196; Northern Kentucky Tel. Co. v. Southern Bell T. & T. Co., 6 Cir., 1934, 73 F.2d 333, 97 A.L.R. 133, cert. den. 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251.

■ Both the district court in its memorandum opinion and the defendants in their brief and argument before this Court have taken the position that the plaintiff's damages are traceable to the initial "refusal to deal" with the plaintiff pursuant to the "exclusive clause", which the jury found to have taken place in 1957, and that the subsequent refusals by Berenson in 1961 and 1964 to lease new or additional space to the plaintiff merely reiterated the initial refusal without giving rise to new and independent damages to the plaintiff's business. With this position, we cannot agree.

Our disagreement is based on the conclusion that there are essential distinctions between the situation here and the situations presented by the "refusal to deal" cases relied upon by the defendants and that the plaintiff suffered new and independent damages as a result of the subsequent refusals. Both Garelick v. Goerlich's, Inc., supra, and Sherman v. Goerlich's, Inc., supra, which are strongly relied on by the defendants, involve situations where a supplier refused to sell its product to a distributor at some time outside the statutory period and then reiterated these refusals within the statutory period by failing to react to initiatives from the terminated distributor to resume a course of dealing. In both these cases it was held that the cause of action accrued when the initial refusal to deal was made, and was therefore barred by running of the statute of limitations, because the damages suffered by the distributors were sustained at that time and in no way altered or

affected by the subsequent refusals occurring within the limitations period. This approach to the classic "refusal to deal" situation has been employed by this circuit in Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., N.D. Ala., 1960, 197 F.Supp. 333, aff'd. 5 Cir., 1961, 295 F.2d 362.[2]

Each of these cases involved the termination of a course of dealing whereby the defendant supplier or manufacturer regularly furnished a distributor or dealer with a certain continuously available product for resale and where any subsequent refusal was merely a reiteration of the previous termination, in no way altering what had already been done. Here, each refusal to lease new or additional store space to the plaintiff must be looked upon as an independent and separate transaction from which independent and separate damages flowed. The plaintiff and the defendants did not stand in a continuing relationship to each other as *buyer and seller of a product*, as in the classic "refusal to deal" situation. Moreover, the store spaces sought by the plaintiff were not a continuously available commodity, as were the products involved in the cases relied on by the defendants, but became available only periodically and under uniquely different circumstances, so that even the second refusal to rent the Thornton space in 1961 was not merely the reiteration of the previous refusal to lease the same space in 1957, but was a new overt act giving rise to new and independent damages to the plaintiff determinable only from the circumstances existent when the refusal was made in 1961. The refusal to lease a space unavailable during the time intervening after a prior refusal is not the "reiteration" of a "refusal to deal" policy, as the term is used in cases dealing with the classic situation.

We therefore hold that separate causes of action accrued in favor of the plaintiff when he was refused space in 1961 and 1964, and that these actions are not barred by the limitation established by 15 U.S.C. § 15b, supra. In doing so, we express no opinion as to whether the "exclusive clause" of National Shirt's lease with Berenson violated Section 1 of the Sherman Act, supra, as alleged by the plaintiff, but remand for further proceedings at the district court level to determine this ultimate issue.

Our resolution of this issue makes it unnecessary to consider plaintiff's contention that the running of the statute of limitations was tolled by the fraudulent concealment of the conspiracy by the defendants, or his contention that the district court abused its discretion in refusing him the right to file a supplemental complaint under Rule 15(d), Federal Rules of Civil Procedure. Furthermore, we find the plaintiff's contention that the district court abused its discretion in ordering a separate trial on the limitations issue without merit. See Baldwin v. Loew's, Incorporated, 7 Cir., 1963, 312 F.2d 387.

Plaintiff also contends that the district court erred in dismissing the individual defendant Edward Marks. It is undisputed that Mr. Marks is the president of the corporation owning the National Shirt Store in the Gulfgate Shopping Center and that, although a resident of New York, he spends about two weeks out of the year tending to his duties in the Southern District of Texas. Plaintiff obtained service upon Marks in New York under Articles 2031a and 2031b, Texas Civil Statutes Annot. (long-arm statute), and Rule 4(e), Federal Rules of Civil Procedure.

2. See Emrich Motors Corporation v. General Motor Corp., 7 Cir., 1956, 229 F.2d 714, rev'd. on other grounds, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534, 535 (1951); 2361 State Corporation v. Sealy, Incorporated, N.D.Ill., 1967, 263 F.Supp. 845; Campbell Distributing Co. v. Jos. Schlitz Brewing Co., D.Md.1962, 208 F. Supp. 523; Gaetzi v. Carling Brewing Company, E.D.Mich., 1962, 205 F.Supp. 615.

In its memorandum opinion of September 29, 1965, the district court said:

> The situation is wholly different with respect to the individual defendant, Marks. Section 12 of the Clayton Act by its terms applies only to corporations, and no case has been found wherein it has been applied to an individual. Plaintiff must therefore rest his claim on Section 4, which provides that a person injured by a violation of the antitrust laws may sue in any district "in which the defendant resides or is found or has an agent". Clayton Act, Sec. 4, 15 U.S. C.A. § 15.
>
> Marks neither resided nor was found nor has an agent in this district; therefore, he may not be sued here under the Clayton Act.

Marks was dismissed as a defendant by an order of the district court dated November 21, 1967.

Assuming *arguendo* that the service of process on Marks was effective and that the district court possessed jurisdiction over his person, the question remains as to whether the district court was correct in holding that venue was improper under Section 4 of the Clayton Act, supra, which provides:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States *in the district in which the defendant resides or is found or has an agent,* without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. (Emphasis supplied.)

Clearly, the crucial point to be determined is the meaning of the term "found" as applied to individual defendants, and this is complicated by the paucity of cases dealing with individuals rather than corporations or unincorporated associations. It is well established that, in the case of an unincorporated association, the association will be treated analogously to a corporation, Denver & R. G. W. R. Co. v. Railroad Trainmen, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); Hawkins v. National Basketball Association, W.D.Pa., 1968, 288 F.Supp. 614, and will be deemed "found" within a district if it continuously carries on any substantial part of it activities there. Thill Securities Corporation v. New York Stock Exchange, E.D.Wis., 1968, 283 F.Supp. 239; American Football League v. National Football League, D.Md., 1961, 27 F.R.D. 264; R & E Dental Supply Co. v. Ritter Co., S.D.N.Y., 1960, 185 F.Supp. 812. As for the individual defendant, however, there is no such clear and precise rule. It has been decided that " 'found' in the venue sense does not necessarily mean physical presence" and that a general appearance to defend, the filing of an answer or counterclaim, is sufficient presence to qualify. Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); Switzer Brothers, Inc. v. Chicago Cardboard Co., 7 Cir., 1958, 252 F.2d 407, cert. den. 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069. Other than this we are left with a quote from Judge Learned Hand that the "found" criterion was designed "to permit the plaintiff to sue the defendant wherever he could catch him". Thorburn v. Gates, S.D.N.Y., 1915, 225 F. 613, 615.

The only case that bears any real similarity to the situation at hand is International Bus. Coord., Inc. v. Aamco Auto. Trans., Inc., S.D.N.Y., 1969, 305 F.Supp. 361. There the individual defendant was served in Florida where he was then located and resided under the New York long-arm statute, § 302 CPLR, and Rule 4(e), Federal Rules of Civil Procedure. The individual owned no property, transacted no business and had no agent within the State of New York at the time of service of suit. Under these facts, the district court held that the individual defendant was "caught" and therefore "found" in Florida, not New York, making the venue improper. The court noted that past conduct in the suit district did

not satisfy the "found" requirement and said:

It would be anomalous, indeed, to say that this defendant was "found" within the district when in fact defendant was served with process extraterritorially in Florida under a rule and State long-arm statute which operate only when he cannot be found here. At 365.

We cannot distinguish the situation we are presently faced with from the facts in *International*, nor can we disagree with its holding. We therefore hold that Marks was not "found" in the Southern District of Texas when he was served with process in New York or at any other time pertinent to this action, and that, consequently, venue did not lie under Section 4 of the Clayton Act and the district court's order dismissing Marks as a party defendant was correct.

The judgment of the district court dismissing the action as barred by the statute of limitations is hereby reversed and the cause is remanded for proceedings not inconsistent herewith.

Reversed and remanded.