Thomas H. **REDMOND**

v.

**ATLANTIC COAST FOOTBALL LEAGUE et al.**

**No. IP 71-C-432.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

May 3, 1973.

John D. Raikos, Indianapolis, Ind., for plaintiff.

James M. Klineman of Klineman, Rose & Wolf, Don Schabel, William C. Barnard, Indianapolis, Ind., Joseph W. Annakin, Evansville, Ind., for defendants.

## ORDER

NOLAND, District Judge.

The above entitled cause came on before the Court for hearing on November 8, 1972, at which time the Court heard oral argument on: (1) motions to dismiss for lack of jurisdiction over the persons of all of the defendants, except defendant Lincoln Pierce; (2) motions to dismiss for improper venue before the Court in the Southern District of Indiana as to all of the defendants except defendants Lincoln Pierce, Albert Savill and Sol Rosen; and (3) motions to dismiss for failure to join the real parties in interest, who are indispensable parties, pursuant to Rule 19 of the Federal Rules of Civil Procedure. After a careful review of the briefs filed by the parties and evaluation of the oral arguments of counsel, it is the conclusion of the Court that venue does not properly lie in the Southern District of Indiana as to defendants Atlantic Coast Football League, Elmer Cook, Glenn Turner, Richard Davis, David Rosenfield, William C. Hetherington, Cosmo Iacovazzi, Peter M. Savin, F. Francis D'Addario, Roy Boe, Robert J. Bauer, E. L. Gruber, Max Pearson and Richard R. Hamlett. Whereupon the Court, now being duly advised in the premises, hereby makes the following rulings:

1. Venue does not properly lie in the Southern District of Indiana as to defendants Atlantic Coast Football League, Elmer Cook, Glenn Turner, Richard Davis, David Rosenfield, William C. Hetherington, Cosmo Iacovazzi, Peter M. Savin, F. Francis D'Addario, Roy Boe, Robert J. Bauer, E. L. Gruber, Max Pearson and Richard R. Hamlett.

2. Plaintiff shall make application to this Court within twenty (20) days to have his action against the above named defendants transferred, pursuant to Title 28, United States Code, Section 1404(a), to a specifically named federal

judicial district wherein venue can be demonstrated to exist as against said defendants to the satisfaction of the Court.

3. Upon failure to make such application, the motions of said defendants to dismiss for improper venue will be granted.

It is ordered that said rulings be entered accordingly.

## MEMORANDUM OPINION

■■ The two statutes which must be examined to determine whether venue of this action properly lies within the Southern District of Indiana are Section 4 of the Clayton Act (15 U.S.C. § 15) and 28 U.S.C. § 1391(b). Section 4 of the Clayton Act allows any person injured by a violation of the antitrust laws to sue "in the district in which the defendant resides or is found or has an agent . . . ." Title 28, United States Code, Section 1391(b) provides:

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all the defendants reside, or in which the claim arose, except as otherwise provided by law."

The general venue provisions of 28 U.S. C. § 1391(b) are applicable to antitrust actions and are designed to supplement Section 4 of the Clayton Act. Hoffman Motors Corp. v. Alfa Romeo, 244 F. Supp. 70 (D.C.N.Y., 1965). The purpose of providing a wide choice of venue in antitrust litigation is to further the interest of justice by enabling plaintiffs to obtain redress in a forum in which they can afford to sue, usually their own residence. Cinema Amusements v. Loew's, Inc., 85 F.Supp. 319 (D.C.Del., 1949); Thill Securities Corp. v. New York Stock Exchange, 283 F.Supp. 239 (D.C. Wis., 1968).

■ The plaintiff maintaining a private anti-trust action for treble damages and an injunction has the burden of proving jurisdiction and venue. Flank Oil Co. v. Continental Oil Co., 277 F. Supp. 357, 359, 361 (D.Colo.1967). In other words, once the defendant in a suit pursuant to the Clayton Act for violation of the Sherman Act challenges venue, the plaintiff has the burden of establishing venue under 15 U.S.C. § 15. Fooshee v. Interstate Vending Company, 234 F.Supp. 44, 47 (D.Kan.1964). Consequently, in the instant case, plaintiff Redmond must establish the propriety of venue in the Southern District of Indiana under the liberal venue provisions of 15 U.S.C. § 15 and 28 U.S.C. § 1391(b).

■ Plaintiff may satisfy the venue requirements for antitrust actions by showing by a preponderance of evidence that the Southern District of Indiana is: (1) the place where his cause of action arose; (2) the place of the defendant's residence; or (3) the place where the defendant can be found. Plaintiff must, therefore, establish that the defendants transacted business or were doing business in the forum district contemporaneously with the time of service and the time the cause of action arose, because the antitrust venue statutes are phrased in the present tense. Hawkins v. National Basketball Association, 288 F. Supp. 614, 615 (W.D.Pa., 1968).

## PLACE WHERE THE CAUSE OF ACTION AROSE

■ While it may be appropriate in tort cases to find that the plaintiff's cause of action arose in the jurisdiction where the injury occurred, the current trend is to view this as a simplistic rationale to which antitrust actions are not susceptible. Philadelphia Housing Authority v. American Radiator & S. San. Corp., 291 F.Supp. 252, 259, 260 (E.D.Pa., 1968); California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F.Supp. 1057, 1063 (N.D.Cal., 1970). Both the *Philadelphia Housing Authority* case, *supra*, 291 F.Supp. at 260–261, and the *Clippers* case, 314 F. Supp. at 1063, adopted the following alternative approach to determining

"where the cause of action arose" based upon the "weight of contacts" involved in the case:

"It is submitted that 'where the claim arose' should be dependent upon where the contacts weigh most heavily. A 'weight of contacts test' would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meeting took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district."

The Court in *Clippers, supra,* at 1063, applied the foregoing test as follows:

"Applying this 'weight of contacts' test to the instant action, we find several contacts of significance with this as well as other judicial districts. At least the following contacts exist in this, the Northern District of California: Clippers does business here and presumably would play all or most of the soccer exhibitions here which it claims are being denied it; the April, 1968, agreement which brought NASL into existence was executed here; NASL did in the past have at least three member teams operating in California. On the other hand, several significant contacts have occurred outside this district: NASL has its sole office in Atlanta, Georgia, and the International Games Committee of USSAF is in existence under the laws of New York and does business only in New York."

Although there was some doubt as to the propriety of venue, the Court in *Clippers* concluded that the "weight of contacts"

favored venue in the Northern District of California under 28 U.S.C. § 1391(b). *Id.*

■ In the instant case, however, plaintiff has failed to introduce any substantial evidence of overt acts in the Southern District of Indiana by the Atlantic Coast Football League (ACFL) or the individual defendants which constitute a significant and substantial element of the offenses alleged. There has been no indication to the Court that the ACFL had a member team or participated in football exhibitions or derived any substantial benefit from activities carried on within this jurisdiction during the pendency of this action. Consequently, in accordance with the aforementioned "weight of contacts" test, the Court concludes that the plaintiff has failed to meet his burden of proving that his cause of action arose in this judicial district.

## PLACE WHERE THE DEFENDANTS RESIDE

■ The Court in *Clippers, supra,* 314 F.Supp. at 1063, and numerous other authorities[1] have stated that an unincorporated association "resides" for purposes of venue under 15 U.S.C. § 15 in all those judicial districts in which it is doing business. What constitutes doing business must be decided on the particular facts of each case. *Id.*; Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400, 403 (1st Cir. 1965).

■ The Court in *Clippers, supra,* 314 F.Supp. at 1064 analyzed the activities of the defendant unincorporated association as follows, finding that it was doing business so as to reside in Califor-

1. Rutland Railway Corp. v. Brotherhood of Locomotive Eng., 307 F.2d 21, 29 (2d Cir. 1962), cert. den., 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). See also Denver & R. G. W. R. Co. v. Brotherhood of R. R. Trainmen, 387 U.S. 556, 562, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); Sperry Products v. Association of American R. R., 132 F.2d 408, 411 (2d Cir. 1942); Thill Securities Corpo-

ration, *supra,* 283 F.Supp. at 245; 1 Moore's Federal Practice ¶ 10.142 [5.-4] at 1507; Comment, Federal Court Venue: Residence of an Unincorporated Association, 33 Tenn.L.Rev. 507, 509 (1966); Note, Access of the Unincorporated Association to the Federal Courts: Venue and Diversity Restrictions, 39 St. John's L.Rev. 353, 354 (1965).

nia within the meaning of Section 4 of the Clayton Act (15 U.S.C. § 15):

> "The business which NASL did in California consisted of such activities as having an office in San Francisco, California, beginning in April 1968; entering into the April, 1968, agreement which set up NASL and outlined the structure for the 'Tour Games'; and most obviously the constant contracts occurring through the presence of three professional soccer teams in California, all of which were actively engaged in presenting soccer exhibitions."

The number and sufficiency of these activities was held to be such that the due process tenets of fair play and substantial justice were satisfied in *Clippers* when the defendant association was subjected to suit in that district. *Id.*

Plaintiff Redmond, however, has failed to establish the occurrence of, or participation in, any such activities by the ACFL or the individual defendants contesting venue[2] contemporaneously with the time of service. See Hawkins v. National Basketball Association, 288 F.Supp. 614, 615 (W.D.Pa.1968).

## PLACE WHERE THE DEFENDANTS CAN BE FOUND

■ Section 4 of the Clayton Act (15 U.S.C. § 15) which provides for venue in any district where the defendant is "found," has been interpreted to allow venue in any district in which the defendant is continuously doing business or carrying on any substantial part of its activities. Hawkins v. National Basketball Association, 288 F.Supp. 614, 621 (D.C.Pa.1968); Braun v. Berenson, 432 F.2d 538, 544 (5th Cir. 1970). In both *Braun, supra,* at 544, and *Hawkins, supra,* 288 F.Supp. at 621, it was held that an unincorporated association, by analogy to a corporation, is "found" within

the meaning of Section 4 of the Clayton Act wherever it is doing business. See also *Clippers, supra,* 314 F.Supp. at 1064.

The Court in *Hawkins*[3] held that the defendant NBA, a joint venture or unincorporated association, was doing business so as to be "found" within any judicial district "where the team of a corporate or non-corporate member of the venture continuously plays regularly scheduled league basketball games from which the Association derives substantial financial benefit." The *Hawkins* court then found that the NBA did substantial business continuously in the forum district, and further stated that:

> " . . . since the Association is an entity created and governed by the joint adventures, basic principles of fairness seem to indicate that venue requirements should be deemed met in judicial districts where the members of that joint venture, the alleged co-conspirators, transact or do business."

The Court in *Clippers, supra,* 314 F.Supp. at 1064, similarly found that the activities of the defendant *United States Soccer-Football Association,* an unincorporated association maintaining an office in the district, entering into the agreement which set up the association in the district, as well as the presence of three member teams in the district, all of which continuously engaged in soccer games, were sufficient to hold that the defendant NASL was "found" within the district within the meaning of Section 4 of the Clayton Act.

■ As previously indicated, the plaintiff has failed to establish that the defendants contesting the propriety of venue in the instant case are or were continuously doing business or carrying on any substantial part of their activities in the Southern District of Indiana contemporaneously with service in this action.

---

2. It should be noted that all of the defendants except Savill, Pierce and Rosen, have challenged the propriety of venue in the Southern District of Indiana. It should be further noted that because de-

fendants Savill and Pierce are residents of Hamilton and Marion Counties in Indiana, they are clearly subject to venue in this Court.

3. *Hawkins, supra,* 288 F.Supp. at 622.

Despite plaintiff's failure to establish that the Southern District of Indiana is the place where his cause of action arose, the place where the defendants [4] reside, or the place where the defendants can be found, plaintiff argues that venue is proper because each of the defendants, as co-conspirators are agents for the purposes of venue of all the other defendants. The plaintiff, thus, advances the co-conspirator theory of venue which is based upon the hypothesis that a co-conspirator in the forum district is an agent of the foreign defendant.

This theory has been sharply criticized and discredited by the Supreme Court in Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 149, 98 L.Ed. 106 (1953). More specifically, the Court stated that:

"  .   .   . Congress by 15 U.S.C. § 15, 15 U.S.C.A. § 15, placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many cases would not lie in one district as to all defendants unless venue was waived. It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally. Thus the petitioner's   .   .   . [co-conspirator]   .   .   . theory   .   .   . [of venue]   .   .   . has all the earmarks of a frivolous albeit ingenious attempt to expand the statute." *Id.*

 The co-conspirator theory of venue represents an attempt to greatly and unwarrantedly extend the already liberal antitrust venue provisions. Philadelphia Hous. Auth. v. American Radiator & S. San. Corp., 291 F.Supp. 252, 262 (E.D.Pa.1968). If adopted, one defendant could be sued any place where another defendant in an antitrust action could be sued, despite the detailed statutory venue provisions applicable to each defendant separately. *Id.* The better rule is that venue as to each and every

defendant be individually established in an antitrust action. *Id.*

In view of the foregoing, the Court concludes that as to defendants Atlantic Coast Football League, Elmer Cook, Glenn Turner, Richard Davis, David Rosenfield, William C. Hetherington, Cosmo Iacovazzi, Peter M. Savin, F. Francis D'Addario, Roy Boe, Robert J. Bauer, E. L. Gruber, Max Pearson and Richard R. Hamlett, venue does not properly lie in this judicial district. The Court, therefore, must either dismiss the action against said defendants or transfer, pursuant to 28 U.S.C. § 1406, to a district wherein venue will doubtlessly lie. Philadelphia Hous. Auth. v. American Radiator & S. San. Corp., 291 F.Supp. 252, 262 (E.D.Pa., 1968).

---

4.  The term defendants is used here to refer to the defendants moving to dismiss

this action for improper venue in this forum.